UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AIDA OLIVA,<br><br>    Plaintiff,<br><br> v.<br><br>COUNTY OF SANTA CLARA, BARBARA<br>TRAW, and DOES 1 THROUGH 50, Inclusive,<br><br>    Defendants.<br>_____ | Case No.: 5:13-CV-02927-EJD<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT**<br><br><br>**[Re: Docket No. 8]** |

Plaintiff Aida Oliva ("Plaintiff") brings suit against her former employer, the County of

Santa Clara ("the County"), and one County employee, Barbara Traw ("Traw"), alleging: (1)

discrimination-disparate impact in violation of Title VII and the Fair Employment and Housing Act

("FEHA"), (2) retaliation under the FEHA, (3) negligent hiring, training, supervision and retention

in violation of 42 U.S.C. § 1983, (4) retaliation for exercising free speech in violation of 42 U.S.C.

§ 1983, (5) retaliation in violation of Labor Code §1102.5, (6) retaliation in violation of Health and

Safety Code § 1278.5, (7) intentional infliction of emotional distress, and (8) retaliation for

exercising free speech rights.

Presently before the Court is Defendants' motion for summary judgment which was heard before the Court on January 17, 2014. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS the motion.

## I.    Background

On April 5, 2011, the County terminated Plaintiff for allegedly violating hospital policy. Defs.' Motion for Summary Judgment ("MSJ") at 7, Docket Item No. 8. Defendants contend Plaintiff failed to follow the hospital's bloodborne pathogen and infection control policies and knowingly exposed a hospital visitor to bloodborne pathogens. Id. Plaintiff argues that her termination was the result of discrimination on the basis of national origin, gender, and age, and that Defendants retaliated against her for exercising her First Amendment right and in violation of state laws. First Amended Complaint ("FAC") ¶¶ 2, 9,18,31, 45, Docket Item No. 3.

Plaintiff is a Clinical Registered Nurse III formerly employed by the County. Pl.'s Opp'n at 1, Docket Item No. 25. Plaintiff worked as a "per diem" nurse in the Mother-Infant Care Center ("MICC") of Santa Clara Valley Medical Center ("SCVMC") from October 1999 until she was released from her employment in April 2011. FAC ¶ 18, Dkt. No. 3. As a "per diem" nurse, Plaintiff did not have a permanent schedule but instead filled vacancies in the scheduling. Declaration of Joanne Cox ("Cox Decl.") ¶5, Docket Item No. 11. Nurses who work as "per diem" or "extra help" in the SCVMC are considered "at-will" employees. Id. Therefore, "per diem" nurses are not entitled to notice prior to termination and can be released from employment for any lawful reason. Cox Decl., Ex. 1, App. C, Dkt. No. 11.

On February 25, 2011, Plaintiff was in the process of administering required oral HIV medicine to a newborn baby of an HIV-positive mother under Plaintiff's care. FAC ¶ 18, Dkt. No. 3. This involved Plaintiff holding and supporting the baby's head with her left hand in an elevated position to prevent the baby from choking, while simultaneously with her right hand holding the medicine dropper into the baby's mouth and administering the baby's liquid medication. Declaration of Oliva Aida ("Oliva Decl.") ¶ 8, Docket Item No. 26. It is undisputed that Plaintiff

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

was made aware the mother was HIV-positive prior to the start of her shift and that the mother requested to staff that her HIV-positive status be kept confidential. Id. It is also undisputed that Plaintiff knew that her HIV-patient had delivered by cesarian section, and that the dressings on her surgical wounds had been removed by the obstetric doctors earlier that same day. While administering the baby's liquid medication, Plaintiff observed her HIV-patient exit the shower and then proceed to accidentally drop a towel on top of her own feet. Id. Fearing for her patient's safety, but occupied with the newborn baby, Plaintiff contends that she made a "split second" decision and asked the HIV-patient's sister to pick up the towel before the HIV-patient tripped on it. Pl.'s Opp'n. at 2, Dkt. No. 31. Plaintiff alleges she perceived a clear and present danger and emergent hazard to the HIV-patient from the fallen towel. Oliva Dec. ¶ 9, Dkt. No. 26. It is undisputed that the sister of the patient picked up the towel and placed it in a hamper. Id.

Following this incident, Nurse Manager for the MICC, Traw, received a complaint from Laura Castillo ("Castillo"), the birth recorder. Defs.' MSJ at 4, Dkt. No. 8. Immediately following Castillo's complaint, Traw went into the patient's room and noticed that the patient was completing a complaint form as well. Traw Depo. at 269:21-270:5, Ex. 17. Traw then went to Pam Stanley ("Stanley"), then-Director of Inpatient Acute Care Nursing, to inform her of the situation. Id. Consistent with the practice of MICC management, Stanley directed Traw to send Plaintiff home until the hospital could hold an investigative meeting. Id.; see also id. at 277:11-278:10; 281:23-282:6. Traw then requested that Plaintiff come to her office, where Traw informed Plaintiff that there had been a complaint against her. Oliva Depo. at 184:23-185:10. Traw then told Plaintiff to leave the MICC and walked her out of the unit. Id. at 350:11-351:5. Traw also told Plaintiff she would not be scheduled to work until further notice, and that an investigative meeting would be held with Plaintiff and her union representation. Traw Depo. at 350:11-351:5, Ex. 17. On February 25, 2011, Stanley emailed Traw and stated that they were terminating Plaintiff and reporting her to the Board of Registered Nursing ("BRN") on February 28, 2011. Declaration of Baraba ("Traw Decl."), Ex. B, Docket Item No. 10.

On March 2, 2011, Plaintiff's lawyer sent an email on her behalf to an attorney in the Santa Clara County Counsel's office ("County Counsel") stating that he represented Plaintiff and complained of harassment, retaliation, and denial of due process and fairness. Oliva Depo. at 122:9-22, Ex. 7. On March 3, 2011, Traw sent a letter to the BRN to inform them that Plaintiff had been placed on administrative leave pending completion of an investigation for violation of bloodborne pathogen policies. Traw Depo., 296:12-16; 297:6-10; Ex. 23; Traw Dec. ¶ 5, Ex. C. According to Defendants, when Traw signed the letter she had no knowledge of Plaintiff's attorney's email from the previous day. Traw Dec. ¶ 5, Docket Item No. 10; Oliva Depo. at 123:14-21.

On March 8, 2011, Matt Gerrior ("Gerrior"), now Director of Inpatient Acute Nursing, met with Plaintiff and two RNPA representatives for an investigative meeting. Gerrior Depo. at 8:15-17; 50:19-51:25; Traw Depo., 292:4-10; Ex. 21. Based on Plaintiff's statements in the meeting, his investigation and discussions with the County's Labor Relations Department, Gerrior decided to terminate Plaintiff for her failure to follow bloodborne pathogen and infection control policies and procedures. Gerrior Depo. at 82:9-17. On April 5, 2011, Gerrior sent Plaintiff a letter terminating her employment. Gerrior Depo. at 80:4-12; Ex. 8. Plaintiff received her termination letter the following day on April 6, 2011. FAC ¶ 27, Dkt. No. 3. Gerrior testified at his deposition that he has never seen the email from Plaintiff's attorney. Id. at 79:21-3.

On September 27, 2011, Plaintiff filed a discrimination charge with the Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC") alleging that Defendants discriminated and retaliated against her on the basis of race, color, national origin, and age. FAC ¶ 12, Dkt. No. 3; Oliva Depo. at 103:3-104:5, Ex. 2. Plaintiff did not include discrimination on the basis of gender in her charge. Id. She received a "right to sue" letter from the DFEH on September 30, 2011, and from the EEOC on December 20, 2011. FAC ¶ 12, Dkt. No. 3. Plaintiff also filed an Administrative "Tort Claim" with the Clerk of the Board on

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

November 21, 2011. Id. The County rejected her claim on December 9, 2011. Id. Plaintiff then filed this lawsuit on November 21, 2011 against Defendants. Id.[1]

## II.    Discussion

### A.  Legal Standard Governing Motions for Summary Judgment

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25; Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson, 477 U.S. at 250; Soremekun, 509 F.3d at 984; see also FRCP 56(c), (e). The opposing party's evidence must be more than "merely colorable" but must be "significantly probative." Anderson, 477 U.S. at 249-50. Further, that party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence showing there is a genuine dispute of material fact for trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). Disputes over irrelevant or unnecessary facts will not preclude a

---

[1] Defendants have submitted evidentiary objections in their Reply. Defs.' Reply at 1, Docket Item No. 32. Defendants object to significant portions of the declarations for which Plaintiff relies upon. The Court SUSTAINS Defendants' objections under Fed. R. Evid. 402 and 602, for legal conclusions regarding issues that are "triable," made by the following Declarants: Decl. of Gina Smith ("Smith Decl.") ¶ 10, Docket Item No. 27, ("Aida Oliva did not violate the policy on blood borne pathogens because the patient was clear that her sister was not exposed to any blood or other bodily fluids. Dr. Byrne and the hospital managers knew this by 8:30pm on February 25, 2011); Decl. of Dagmar Chambers ("Chambers Decl.") ¶ 10, Docket Item No. 28, ("Aida Oliva was terminated for an incident that was not a violation of any hospital policy.") To the extent that the Court relies on any other disputed evidence, the Court addresses the evidentiary objections below. The Court need not reach any remaining objections for which the Court does not rely on.

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

grant of summary judgment. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

Nevertheless, when deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011). A district court may only base a ruling on a motion for summary judgment upon facts that would be admissible in evidence at trial. See In re Oracle Corp. Sec. Litig., 627 F.3d 376, 385 (9th Cir. 2010); FRCP 56(c). Further, it is not a court's task "to scour the record in search of a genuine issue of triable fact" but is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted); see also Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.")

### B. Legal Standard Governing FEHA Actions

In a disparate treatment case, the plaintiff must show that intentional discrimination was the determinative factor in the adverse employment action. Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). There are two ways of proving intentional discrimination: direct evidence and indirect or circumstantial evidence. Bragg v. E. Bay Reg'l Park Dist., C-02-3585-PJH, 2003 WL 23119278 (N.D. Cal. Dec. 29, 2003). Direct evidence is evidence that proves the fact of discriminatory animus without inference or presumption. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998). Should a plaintiff prove intentional discrimination using indirect evidence, the district court invokes the analysis set forth in McDonnell–Douglas Corp. v. Green, 411 U.S. 792 (1973). This is because, in evaluating discrimination claims under FEHA, courts look to pertinent federal precedent and apply the McDonnell Douglas analysis. See Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 (2000).

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In <u>McDonnell Douglas</u>, the Supreme Court held that plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of improper discrimination. A plaintiff can make a prima facie case by showing that: (1) she belongs to a protected class, (2) she was performing the job satisfactorily; (3) she was subjected to an adverse employment action; and (4) similarly situated individuals outside of her protected class were treated more favorably. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993). If a plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to present evidence sufficient to permit the factfinder to conclude that the employer had legitimate, nondiscriminatory reason for the adverse employment action. <u>Id.</u> at 506-07. Should defendant carry this burden of production, the burden of proof shifts back to the plaintiff to demonstrate that the employer's articulated reason is a pretext for unlawful discrimination by either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence. <u>Texas Dep't of Comty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981).

To establish pretext, very little direct evidence of discriminatory motive is required, but if circumstantial evidence is offered, such evidence has to be "specific" and "substantial." <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1222 (9th Cir. 1998); <u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1028 n. 6 (9th Cir. 2006) (merely denying the credibility of defendant's proffered reason for the challenged employment action or relying solely on plaintiff's subjective beliefs that the action was unnecessary are insufficient to show pretext); <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 890 (9th Cir. 1994) ("[A] plaintiff cannot defeat summary judgment simply by making out a <u>prima facie</u> case" to show pretext or "denying the credibility of the [defendant's] witnesses") (internal citations omitted) (alteration in original). The <u>McDonnell Douglas</u> test reflects the principle that direct evidence of intentional discrimination is rare and usually is proved circumstantially. <u>Id.</u> at 354. Through successive steps of increasingly narrow focus, the <u>McDonnell Douglas</u> test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained. <u>Id.</u>

**C.  Whether Defendants Are Entitled to Summary Judgment on Plaintiff's Actions**

Plaintiff asserts the following eight causes of action: (1) disparate treatment discrimination in violation of FEHA (first cause of action); (2) retaliation in violation of FEHA (second cause of action); (3) retaliation in violation of Labor Code § 1102.5 (fifth cause of action); (4) retaliation in violation of Health and Safety Code § 1278.5 (sixth cause of action); (5) intentional infliction of emotional distress (seventh cause of action); and three violations of 42 U.S.C. § 1983 (6) negligent hiring, training, supervision and retention (third cause of action), (7) retaliation for exercising free speech (fourth cause of action), and (8) retaliation for exercising free speech and petition (eighth cause of action).

For the reasons stated below, the Court GRANTS Defendants' Motion in its entirety.

### i.      FEHA Discrimination (First Cause of Action)

#### a.      Defendants' FEHA Administrative Exhaustion Challenge

As a threshold matter, the Court first analyzes whether Plaintiff's gender discrimination claim was properly exhausted. The parties do not dispute whether Plaintiff exhausted her administrative remedies as to her racial and age discrimination claims. Defendants argue that Plaintiff's failure to allege gender discrimination in her DFEH / EEOC claims precludes her from raising the claim in her civil complaint. Defs.' MSJ at 8, Dkt No. 8. Plaintiff counters by arguing that her judicial complaint may encompass discrimination based on gender because it is "like or reasonably related" to the allegations made in her DFEH / EEOC charge. Pl.'s Opp'n at 14, Dkt. No. 25. Alternatively, Plaintiff argues her claim for gender discrimination is actionable because Plaintiff submitted a "Pre-Complaint Questionnaire-Employment" form to these agencies on September 12, 2011 that included "sex" as a basis for her alleged discrimination. Pl.'s Opp'n at 14, Docket Item No. 25. Plaintiff argues that DFEH and EEOC's oversight in failing to include it on her EEOC and DFEH charges should not preclude her from including it in her civil complaint.

Prior to bringing a civil suit on an FEHA cause of action, a plaintiff must exhaust her administrative remedies. See Rojo v. Kliger, 52 Cal. 3d 65, 83 (1990). Exhaustion requires filing a complaint with the DFEH within one year of the date of the alleged unlawful practice and then

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

obtaining a notice of the right to sue. Cal. Gov't Code § 12960; see Romano v. Rockwell Int'l, Inc.,
14 Cal. 4th 479, 492 (1996). Failure to exhaust deprives the court of jurisdiction over a plaintiff's
cause of action. Miller v. United Airlines, Inc., 174 Cal. App. 3d 878, 890 (1985). "The
administrative charge requirement serves the important purposes of giving the charged party notice
of the claim and 'narrow[ing] the issues for prompt adjudication and decision.'" Park v. Howard
Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting Laffey v. Northwest Airlines, Inc., 567 F.2d
429, 472 n. 325 (D.C. Cir. 1976)).

For a plaintiff "[t]o exhaust his or her administrative remedies as to a particular act made
unlawful by the Fair Employment and Housing Act, the claimant must specify that act in the
administrative complaint, even if the complaint does specify other cognizable wrongful acts."
Martin v. Lockheed Missiles & Space Co., 29 Cal. App. 4th 1718, 1724 (1994). "The scope of the
written administrative charge defines the permissible scope of the subsequent civil action."
Rodriguez v. Airborne Express, 265 F.3d 890, 897 (9th Cir. 2001) (citing Yurick v. Super. Ct., 209
Cal. App. 3d 1116, 1121-23 (1989)). "Allegations in the civil complaint that fall outside of the
scope of the administrative charge are barred for failure to exhaust." Id.

However, these procedural requirements are to be construed liberally in order to achieve the
comprehensive purposes of FEHA. See Cal. Gov't Code § 12920; Cal. Gov't Code § 12993(a).
Therefore, district courts do have jurisdiction over a civil claim if it is "reasonably related to the
allegations of the [administrative] charge." Oubichon v. North Am. Rockwell Corp., 482 F.2d 569,
571 (9th Cir. 1973); see Nazir v. United Airlines, Inc., 178 Cal. App. 4th 243, 268 (2009) ("[W]hat
is submitted to the DFEH must not only be construed liberally in favor of the plaintiff, it must be
construed in light of what might be uncovered by a reasonable investigation"). Thus, "[i]t is
sufficient that the [DFEH] be apprised, in general terms, of the alleged discriminatory parties and
the alleged discriminatory acts." Nazir, 178 Cal. App. 4th at 267 (internal quotation marks and
citation omitted).

In this case, the Court is not convinced that Plaintiff's gender discrimination claim is
"reasonably related" to her racial and age discrimination allegations such that they may be

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

considered properly exhausted by the charged allegations. Plaintiff argues that it is "highly likely" that an investigation into Defendants' retaliatory conduct would have uncovered all grounds upon which Defendants based their retaliation and thus retaliation founded upon one classification is "like or reasonably related" to retaliation based on another classification. Pl.'s Opp'n at 14, Dkt. No. 25. Plaintiff's argument is wholly conclusory. Absent any factual or legal authority to support this conclusory statement, Plaintiff has fallen short of meeting her burden of demonstrating to the Court why an investigation regarding discrimination on the basis of age or race would reasonably trigger an investigation into discrimination on the basis of gender. See Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044, 1050 (9th Cir. 1987) (holding that allegations of sex and age discrimination in civil complaint were not encompassed by the charge filed with the DFEH alleging only national origin discrimination).

Next, the Court analyzes whether Plaintiff's gender discrimination claim is actionable based on her DFEH pre-complaint form. The Court follows the holding in B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1102 (9th Cir. 2002), where the Ninth Circuit held that if the charge itself is deficient in recording the complainant's theory of the case due to error of an agency representative who completes the charge form, "then the plaintiff may present her pre-complaint questionnaire as evidence that her claim for relief was properly exhausted." See also Sickinger v. Mega Systems, Inc., 951 F. Supp. 153, 157-58 (N.D. Ind. 1996) (holding that plaintiff could rely upon allegations made in her pre-complaint questionnaire for purposes of exhaustion where EEOC representative who typed the charge failed to include allegations of wrongful retaliation that were clearly presented on the questionnaire); see also Cheek v. W. & S. Life Ins., Co., 31 F.3d 497, 502 (7th Cir. 1994) (determining that "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations.")

In this case, Plaintiff checked boxes on her pre-complaint form indicating that she believed that she had been subjected to discrimination based on "race," "sex," "age," and "national origin." Declaration of Charles A. Bonner ("Bonner Decl.") at 12, Ex. 6, Docket Item No. 30. Reasonably and liberally interpreted, Plaintiff's pre-complaint questionnaire indicates that she intended her

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

right to sue letter to encompass her age, racial and gender discrimination claims. Although no explicit admission of agency negligence has been provided, nor does this court impart any negligence onto the agency, the evidence in the record does suggest that any deficiency in the charge regarding the absence of discrimination based on "sex" should be attributed to the agency itself rather than to Plaintiff. The agency was on notice of Plaintiff's intent to pursue claims of gender discrimination because the evidence in the record clearly shows her pre-complaint form had the appropriate boxes checked. Plaintiff should not suffer prejudice in litigation due to an error caused by the agency.

In light of the information in the pre-complaint questionnaire showing that Plaintiff checked boxes indicating a charge of gender discrimination, the Court concludes that Plaintiff's gender discrimination claim was properly exhausted and therefore not barred.

### b.  Whether Plaintiff Has Established a Prima Facie Case of Discrimination

Plaintiff argues that Defendants treated her disparately, differently and discriminatorily in violation of Title VII and FEHA[2] because of her ethnicity (Filipino), her gender (female), and her age (58). FAC ¶ 31, Dkt. No. 3. Due to these characteristics, Plaintiff argues Defendants were motivated to take adverse action. Id. "To establish a prima facie case, a plaintiff must offer evidence that 'give[s] rise to an inference of unlawful discrimination.'" Cordova v. State Farm Ins. Cos., 124 F.3d 1145, 1148 (9th Cir. 1997) (quoting Burdine, 450 U.S. at 253). Generally, the plaintiff must provide evidence that "(1) [s]he was a member of a protected class, (2) [s]he was qualified for the position [s]he sought or was performing competently in the position [s]he held, (3) [s]he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive," e.g., similarly-situated individuals outside her protected class were treated more favorably. Guz, 24 Cal. 4th at 355. A plaintiff also "must prove by a preponderance of the evidence that there was a 'causal

---

[2] The Amended Complaint alleges discrimination in violation Title VII and the DFEH. The Department of Fair and Equal Housing is the California government agency charged with the protection of residents from employment, housing and public accommodation discrimination.. The Court therefore assumes Plaintiff was alleging discrimination in violation of Title VII and the Fair and Equal Housing Act ("FEHA").

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   connection' between [her] protected status and the adverse employment decision." <u>Mixon v. Fair</u>

2   <u>Employment & Housing Comm'n</u>, 192 Cal. App. 3d 1306, 1319 (1987).

3         The Court finds Plaintiff has provided sufficient evidence establishing a prima facie case of

4   discrimination. Plaintiff belongs to one or more protected classes because she is a female of

5   Filipino ancestry and 58 years old. FAC ¶ 31, Dkt. No. 3. Plaintiff has competently served as a "per

6   diem" nurse at the hospital for twelve years with no evidence in the record indicating poor

7   performance. Oliva Dec.¶¶ 2-3, Dkt. No. 26. Plaintiff suffered an adverse employment action when

8   she was terminated from the County. FAC ¶ 7, Dkt. No. 3. Finally, Plaintiff has provided evidence

9   that another similarly situated employee was treated more favorably when the county did not report

10  to the BRN another nurse, of a different racial classification, posted a sign stating in bold print

11  "HIV Positive" on the hospital crib of an HIV positive infant. FAC ¶ 29, Dkt. No. 3. According to

12  Plaintiff, this sign was visible to anyone who walked by in the hospital, including "visitors,

13  vendors, strangers and others." <u>Id.</u> Plaintiff argues that the nurse was not disciplined in any manner

14  for this alleged HIPPA violation, while Plaintiff was reported to the BRN prior to the completion

15  of the hospital's own investigation. <u>Id.</u>

16        Accordingly, the Court finds an inference of discrimination has been raised and Plaintiff

17  has stated a prima facie case of racial discrimination.

18              **c.  Defendants' Nondiscriminatory Reason for the Adverse**

19                          **Employment Action**

20        By satisfying the first prong of the burden-shifting test outlined in <u>McDonnell Douglas</u>, the

21  burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for taking adverse

22  employment action against Plaintiff. To satisfy their burden of production on this issue, Defendants

23  "need not persuade the court that [they were] actually motivated by the proffered reasons. It is

24  sufficient if the[ir] . . . evidence raises a genuine issue of fact as to whether [they] discriminated

25  against the plaintiff. To accomplish this, the Defendant[s] must clearly set forth, through the

26  introduction of admissible evidence, the reasons . . ." for taking adverse action against the plaintiff.

27  <u>Burdine</u>, 450 U.S. 248 at 255.

28

**United States District Court**
For the Northern District of California

Under FEHA, a defendant's true reasons, "if nondiscriminatory, . . . need not necessarily have been wise or correct . . . While the objective soundness of an employer's proffered reasons supports their credibility, the ultimate issue is simply whether the employer acted with <u>a motive to discriminate illegally</u>. Thus, 'legitimate' reasons . . . in this context are reasons that are <u>facially unrelated to prohibited bias</u>, and which, if true, would thus prohibit a finding <u>of discrimination</u>." <u>Guz</u>, 24 Cal. 4th at 358 (emphasis original).

Defendants assert that even if Plaintiff has met her burden of establishing a prima facie case of discrimination, Defendants had a legitimate, non-discriminatory reason for placing Plaintiff on administrative leave without explanation, filing an investigative report to the BRN, and for ultimately terminating Plaintiff's employment. Defs.' MSJ at 11, Dkt. No. 8. Defendants contend that pending Plaintiff's investigative meeting with Matt Gerrior, the County of Santa Clara suspended Plaintiff and informed other units not to work with her based on legitimate, nondiscriminatory factors demonstrating violation of hospital policies and procedures. Defs.' MSJ at 11, Dkt. No. 8. These factors included Castillo's detailed written complaint to Traw stating that Plaintiff asked an HIV-patient's sister to pick up the patient's bloody underwear and gown[3], Traw's own observations of the patient, consultation with hospital management and substantiated concern that Plaintiff violated SCVMC's bloodborne pathogen and infection control policy. Defs.' MSJ at 11, Dkt. No. 8. The investigation, according to Defendants, provided sufficient support for Defendants to believe that Plaintiff had created a risk of exposure to either body fluids or blood of an HIV-patient. <u>Id.</u> And consistent with Defendants' investigation, Plaintiff herself admitted she did not follow universal precautions regarding the safe handling of soiled linen. Oliva Depo. at 277:15-280:4.

Defendants also maintain that, consistent with BRN policies regarding the submission of complaints, Defendants sent a letter to the BRN to inform them that Plaintiff had been placed on administrative leave pending completion of an investigation for violation of policies on bloodborne

---

[3] Defendants in their Motion for Summary Judgment state that Castillo's written complaint to Traw stated Plaintiff asked the patient's sister to pick up the patient's bloody underwear and gown. Plaintiff stated she asked the patient's sister to pick up a dropped towel. Whether the patient's sister was asked to pick up a towel or soiled underwear is not a material fact in this case.

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    pathogens. Defs.' MSJ at 11, Dkt. No. 8. Defendants presented evidence that the BRN policy

2    regarding complaints states that "[a] complaint should be filed by anyone who believes that a

3    licensee of the Board has engaged in illegal activities which are related to his/her professional

4    responsibilities." See Defendants' Request for Judicial Notice, Docket Item No. 9.[4] This includes

5    allegations of gross negligence or incompetence, which Defendants believed Plaintiff engaged in

6    by exposing the sister to soiled linen of the HIV-patient. Id. Defendants contend that when Traw

7    signed the letter submitted to BRN, she had no knowledge of Plaintiff's attorney's email from the

8    previous day sent to County Counsel. Defs.' MSJ at 11, Dkt. No. 8.

9         Several courts have recognized that a violation of company policy is a legitimate,

10   nondiscriminatory reason for terminating an employee. See, e.g., Dumas v. New United Motor

11   Mfg., Inc., 305 Fed. Appx. 445, 448 (9th Cir. 2008) (Unpub. Disp.) ("NUMMI proffered a

12   legitimate, non-discriminatory reason for terminating Mr. Dumas-his violation of company

13   policy."); Elmore v. New Albertson's, Inc., 2012 WL 3542537, *4 (C.D. Cal. Aug. 15,

14   2012) ("Albertson's has provided a legitimate, nondiscriminatory reason for Elmore's termination.

15   Specifically, Elmore violated Albertson's company policy through her conduct."); Rezentes v.

16   Sears, Roebuck & Co., 729 F. Supp. 2d 1197, 1205 (D. Haw. 2010) ("Sears may have 'honestly

17   believed' that Rezentes violated company policy and then lied about her actions. Firing an

18   employee because of honesty and integrity concerns is a legitimate, nondiscriminatory reason for a

19   termination.")

20        Much like these decisions, the Court finds that Defendants have proffered sufficient

21   evidence to demonstrate that a legitimate, non-discriminatory reason existed for Defendants to take

22   adverse employment action against Plaintiff. Defendants' investigation uncovered violations of the

23   hospital's bloodborne pathogen policy. Plaintiff admitted to being aware of the hospital's universal

24   ─────────────────────

25   [4] The Court GRANTS Defendants' request for judicial notice of online records from the California Department of
     Consumer Affairs, Board of Registered Nursing. http://www.rn.ca.gov/enforcement/complaint.shtml . See

26   Papai v. Harbor Tug & Barge Co., 67 F.3d 203, 207, n. 5 (9th Cir. 1995), rev'd on other grounds, 520 U.S. 548, 117 S.
     Ct. 1535, 137 L. Ed. 2d 800 (1997) ("Judicial notice is properly taken of orders and decisions made by other courts and

27   administrative agencies.")

28

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

precautions, yet decided not to follow them. Oliva Depo. at 277:15-280:4. Bloodborne pathogens can be transparent and must be handled using "universal precautions." Oliva Depo. at 281:1-20. The purpose of the "Standard Universal Precautions" outlined in the Santa Clara Valley Medical Center's Infection Prevention Manual is to minimize the risk of exposure to blood and body fluids of all patients. Declaration of Barbara Traw ("Traw Decl.") Ex. A at 2, Docket Item No. 10. The Standard Universal Precautions must be "consistently practiced by all health care workers in the care of all patients since medical history and examination cannot reliably identify all patients infected with HIV or other blood-borne pathogens," including "per diem" or "extra help" employees. Id. Defendants' decision to terminate Plaintiff for failing to adhere to this standard was legitimate and non-discriminatory.

The alleged violation of hospital policy was also legitimate grounds for Defendants to report Plaintiff to the BRN. As noted, the BRN policy provides for complaints from anyone "who believes" that a licensee of the Board has acted with gross negligence or incompetence related to his/her professional responsibilities. See Defendants' Request for Judicial Notice, Dkt. No. 9. Defendants maintain they reported Plaintiff to the BRN because they believed Plaintiff exposed a relative of an HIV-patient to potentially soiled linen containing bloodborne pathogens. Defs.' MSJ at 11, Dkt. No. 8. The Court's analysis is limited to whether Defendants' have satisfied their burden of production on the issue of whether it had non-discriminatory reasons for taking adverse employment action against Plaintiff, not whether that decision was ultimately correct. Under FEHA, a Defendant's true reasons, if nondiscriminatory, "need not necessarily have been wise or correct." Guz, 24 Cal.4th at 358. "The ultimate issue [for the Court] is simply whether the employer acted with a motive to discriminate illegally." Id. (emphasis in the original). The Court finds Defendants have presented sufficient evidence of a legitimate reason "facially unrelated to prohibited bias" which, if true, would preclude a finding of discrimination.

Accordingly, the burden shifts back to Plaintiff to raise triable issues of fact regarding pretext.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### d.  **Whether Plaintiff Has Raised Triable Issues of Fact Concerning the Pretextual Nature of Defendants' Explanation**

To show that Defendants' articulated reasons for taking adverse action were not the true reason, Plaintiff "may succeed . . . either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. "[C]ircumstantial evidence that tends to show that the employer's proffered motives were not the actual motives 'must be "specific" and "substantial" in order to create a triable issue with respect to whether the employer intended to discriminate . . ..'" Blue v. Widnall, 162 F.3d 541, 546 (9th Cir. 1998) (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998)). A plaintiff cannot however simply argue that the employer's decision was wrong, mistaken, or unwise. McRae v. Dep't of Corr. & Rehab, 142 Cal App. 4th 377, 388-89(2006). Plaintiff must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence . . ." Id. at 389.

Here, Plaintiff presents no direct evidence that the proffered explanation is a pretext for discrimination. Had Plaintiff offered direct evidence, she would need only "very little evidence" to avoid summary judgment. E.E.O.C. v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir. 2009). Plaintiff instead offers very little circumstantial evidence to show Defendants' articulated reasons for taking adverse action against her were pretextual. Plaintiff argues that Defendants' termination of her without any investigation is evidence of pretext because the stated reasons are "without merit." Pl.'s Opp'n at 1, 4, 17, Dkt. No. 25. Because Traw and other hospital management left Plaintiff "in the dark" about why Traw had sent Plaintiff home until March 8, 2011, Plaintiff had no opportunity to "prepare a defense, to obtain witnesses, or to organize her thoughts against any allegations." Pl.'s Opp'n at 9, Dkt. No. 25. In essence, Plaintiff's argument is that the hospital's investigation of the alleged HIPPA violation and alleged violation of the hospital's bloodborne pathogen policy

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

was a sham. However, her evidence is nothing more than conclusory statements and contradicted by substantial and specific evidence presented by Defendants. Defendants presented evidence that Gerrior met with Oliva and two RNPA representatives for an investigative meeting on March 8, 2011. Gerrior Depo. at 8:15-17; 50:19-51:25; Traw Depo., 292:4-10; Ex. 21. Gerrior testified that the investigation revealed facts sufficient to support a good faith belief that Plaintiff had created a risk of exposure to either body fluids or blood. Gerrior Depo. at 58:6-12; 60:12-15; 58:6-59:11. This evidence, coupled with Plaintiff's own admission that she did not follow universal precautions, undermines Plaintiff's argument that the investigation was "without merit."

Plaintiff also argues that when her attorney contacted County Counsel informing them of her complaint against Traw, Defendants retaliated against her. Plaintiff offers again little more than general and conclusory statements to support the above allegations. Both Traw and Gerrior testified in their depositions that they had no personal knowledge of Plaintiff's attorney's letter to County Counsel, and Plaintiff offers no evidence to rebut their testimony. Gerrior Depo. at 79:21-3; Traw Decl. ¶5, Docket Item No. 10. And again, Plaintiff's own admission that she did not follow universal precautions regarding the safe handling of soiled linen supports the reasonableness of Defendants' stated legitimate, non-discriminatory reasons for terminating her. Oliva Depo. at 277:15-280:4. The Court is not here to function as "a super-personnel department that reexamines an entity's business decisions." Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986). It is Plaintiff's burden to demonstrate that Defendants' articulated reasons for their adverse actions are a pretext for unlawful discrimination using specific and substantial evidence. Burdine, 450 U.S. at 256. Plaintiff's evidence of pretext is neither specific nor substantial. Crawford v. MCI Worldcom Commc'ns, Inc., 167 F. Supp. 2d 1128, 1135 (S.D. Cal. 2001).

Accordingly, Plaintiff's evidence is not sufficient to allow a reasonable jury to find Defendants' reasons for terminating Plaintiff were really a pretext for discrimination. Defendants' motion is GRANTED as to the FEHA Discrimination claims.

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### ii.   FEHA Retaliation (Second, Fifth, and Sixth Causes of Action)

Government Code § 12940(h) prohibits retaliation against a person by an employer because "the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." Cal. Gov't Code § 12940(h). To establish retaliation, the plaintiff must make a prima facie showing that: (1) he engaged in a protected activity, (2) the employer subjected him to an adverse employment action, and (3) there was a causal link between the two. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005). Once the prima facie case is established, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the adverse action. Yanowitz, 36 Cal. 4th at 1042. Upon making such a showing, the presumption of retaliation is dropped and the burden shifts back to the plaintiff to establish intentional retaliation. Yanowitz, 36 Cal. 4th at 1042.

At the outset, the Court addresses Defendants motion for summary judgment as to Plaintiff's fifth cause of action, retaliation in violation of Labor Code Section 1102.5. Because Plaintiff neither oppose Defendants' motion on this claim nor presents sufficient evidence to support her prima facie claim, summary judgment with respect to Plaintiff's fifth cause of action is GRANTED.

Defendants also move for summary judgment as to Plaintiff's second cause of action, retaliation under California Government Code § 12940 (h), and Plaintiff's sixth cause of action, retaliation in violation of the California Health and Safety Code Section 1278.5. The Court will address, in turn, each of Plaintiff's retaliation claims.

### a.   California Health and Safety Code Section 1278.5

Section 1278.5 of the California Health and Safety Code states that "[n]o health facility shall discriminate or retaliate in any manner against any . . . employee of the health facility because that . . . employee . . . has presented a grievance or complaint . . . relating to the care, services, or conditions of that facility." Cal. Health & Safety Code § 1278.5(b)(1).

According to Plaintiff, Defendant County through SCVMC retaliated against Plaintiff after her attorney sent an email to Defendants stating:

18

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Ms. Aida E. Oliva in her complaint against Ms. Barbara C. Traw for harassment, retaliation and denial of due process and fairness arising from a recent pattern of conduct, including suspending Ms. Oliva without notice or an opportunity to be heard . . . Please contact Ms, Traw and share our concerns that she is violating Ms. Oliva's constitutional rights of due process, fairness and liberty afforded by the 5th and 14th Amendments to the United States Constitution, as well as other federal and California State laws. She should cease and desist from such illegal conduct immediately.

FAC ¶ 34,55, Dkt. No. 3.

Section 1278.5 of the California Health and Safety Code protects whistleblowers from retaliation when a member of a medical staff complains about unsafe patient care and conditions at a medical facility. Cal. Health & Safety Code § 1278.5(b). Section 1278.5 is intended to encourage medical staff and patients to notify government entities of "suspected unsafe patient care and conditions." Cal. Health & Safety Code § 1278.5(a); <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1105 (9th Cir. 2008).

Defendants maintain that Plaintiff cannot meet her burden of establishing a prima facie case of retaliation because she has presented no evidence that she was a whistleblower regarding any unsafe patient care or conditions at SCVMC. Defs.' MSJ at 10, Dkt. No. 8. Defendants point to Plaintiff's own deposition admitting that Plaintiff's attorney's email contains no mention of unsafe patient care or conditions at SCVMC. Oliva Depo. at 122:9-22, Ex. 7. Furthermore, Defendants argue that both Gerrior and Traw had no knowledge of Plaintiff's attorney's email when they took adverse actions against her. Defs.' MSJ at 10, Dkt. No. 8. Without knowledge of the Plaintiff's email to County Counsel, Defendants argue they could not retaliate against Plaintiff even if this was protected whistleblowing activity under Section 1278.5.

Plaintiff argues that she is within the scope of persons whom the statute is intended to protect because as a member of SCVMC's medical staff, her attorney's email to County Counsel complaining about her own treatment stems from her earlier actions pointing out "such instances of unsafe patient care and conditions." Pl.'s Opp'n at 16-17, Dkt. No. 25. It is undisputed that Plaintiff

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   falls under the statute's definition of "medical staff." Cal. Health & Safety Code § 1278.5(b)(1).

2   The only relevant question then is whether the nature of Plaintiff's conduct falls within

3   "whistleblower" activities protected under the statute. However, the Court need not reach this

4   question. Without knowledge of the Plaintiff's email to County Counsel, Defendants could not

5   have retaliated against Plaintiff. Gerrior, who made the decision to release Plaintiff from her

6   employment, testified that he has never seen the email sent by Plaintiff's attorney. Gerrior Depo. at

7   79:21-3. Similarly, Traw testified she had no knowledge of Plaintiff's attorney's email when she

8   signed the letter to the BRN. Traw Dec. ¶ 5. Moreover, Defendants presented undisputed evidence

9   that the hospital began the process of releasing Plaintiff and to report her to the BRN <u>before</u> her

10  attorney's letter was sent to County Counsel. <u>See</u> <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268,

11  272 (2001) (employer's knowledge of a lawsuit prior to transferring employee "immaterial" to

12  retaliation claim "in light of the fact that [the employer] . . . was contemplating the transfer before

13  it learned of the suit" and "proceeding along lines previously contemplated, though not yet

14  definitively determined, is no evidence . . . of causality"). Plaintiff's argument that Defendants'

15  denial of knowledge only raises triable issue of facts regarding credibility is also unpersuasive.

16  Evidence in the record, outside of Defendants' own sworn testimony, confirms that adverse

17  employment action against Plaintiff began <u>before</u> the March 2, 2011 letter was even sent to County

18  Counsel. <u>See</u> Bonner Decl., Ex. 19, Dkt. No. 30 (Email dated February 28, 2011, stating that

19  "MICC is in the process of releasing Aida Oliva . . .") Consequently, Plaintiff has not introduced

20  any evidence to demonstrate any causal link between her attorney's email and any alleged adverse

21  employment actions.

22        Plaintiff has not met her burden of establishing a prima facie case of retaliation under

23  Section 1278.5 of the California Health and Safety Code. Accordingly, Defendants' motion for

24  summary judgment is GRANTED as to this claim.

25                      **b.  California Government Code § 12940 (h)**

26        FEHA makes it illegal for "for any employer, labor organization, employment agency, or

27  person to discharge, expel, or otherwise discriminate against any person because the person has

28

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    opposed any practices forbidden under this part or because the person has filed a complaint,

2    testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h).

3            Plaintiff argues Defendants took adverse employment action against Plaintiff in violation of

4    California Government Code § 12940(h) by retaliating against Plaintiff for participating

5    in statutorily protected activity, namely, Plaintiff's complaints to the DFEH and to the EEOC, as

6    well as Plaintiff's complaint through her attorney regarding harassment, discrimination and

7    violations of her constitutional rights. FAC ¶ 35-36, Dkt. No. 3.

8            Defendants maintain that Plaintiff cannot meet her burden of establishing a prima facie case

9    of retaliation pursuant to Section 12940(h) because Plaintiff cannot demonstrate any causal link

10   between her attorney's email and any alleged adverse employment action. The Court agrees for the

11   reasons discussed above regarding Plaintiff's alleged protected activity under Section 1278.5 of the

12   California Health and Safety Code. Plaintiff has not demonstrated any causal link between her

13   attorney's email and any alleged adverse employment actions.

14           Plaintiff has not met her burden of establishing a prima facie case of retaliation under

15   California Government Code § 12940(h). Accordingly, Defendants' motion for summary judgment

16   is GRANTED as to this claim.

17                     **iii.   Plaintiff's Section 1983 Causes of Action**

18           Defendants move for summary judgment on Plaintiff's three claims under 42 U.S.C. §

19   1983: (1) negligent hiring, training, supervision, and retention, and (2) retaliation for exercising

20   free speech (fourth cause of action), and (3) retaliation based on free speech under a <u>Monell</u> Theory

21   (eighth cause of action). The Court addresses each in turn.

22                     **a.   Negligent Hiring, Training, Supervision, and Retention**

23                              **(Third Cause of Action)**

24           Plaintiff's third cause of action pursuant to 42 U.S.C. § 1983 alleges negligent

25   hiring, training, supervision, and retention against all Defendants. FAC ¶¶ 38-42, Dkt. No. 3.

26   Specifically, she argues that the "Defendants' actions and failures . . . constitute a pattern, practice,

27

28

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C § 1983" and that

2   Defendants "wrongfully and intentionally retaliated against Plaintiff." Id.

3          To establish such a claim, a plaintiff needs to show that her constitutional rights have been

4   violated and also make a showing that the negligent hiring, training, or supervision policies directly

5   caused her constitutional injury. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989)

6   ("[A] municipality can be found liable under § 1983 only where the municipality itself causes [a]

7   constitutional violation at issue.") (citing Monell v. New York City Dep't. of Soc. Services, 436

8   U.S. 658, 694-95 (1978)); see also Burrell v. Cnty. of Santa Clara, 11-CV-04569-LHK, 2013 WL

9   2156374 (N.D. Cal. May 17, 2013).

10         In City of Canton, 489 U.S. 378, a detainee brought a civil rights action against the city,

11  alleging violation of her right to receive necessary medical attention while in police custody. The

12  Supreme Court held that the inadequacy of police training may serve as the basis for § 1983

13  municipal liability only where the failure to train amounts to deliberate indifference to the rights of

14  persons with whom the police come into contact with. Essentially, a city is not liable under § 1983

15  unless a municipal "policy" or "custom" is the moving force behind the constitutional violation.

16  City of Canton, 489 U.S. at 379. Therefore, to prove deliberate indifference, "the plaintiff must

17  show that the municipality was on actual or constructive notice that its omission would likely result

18  in a constitutional violation. Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175, 1186 (9th Cir. 2002)

19  (quoting Farmer v. Brennan, 511 U.S. 825, 841 (1994).

20         Defendants contend that the Complaint only alleges that Defendants wrongfully and

21  intentionally retaliated against Plaintiff and that her claim fails because she has not shown that she

22  suffered a deprivation of her constitutional rights, namely, her rights under the First Amendment or

23  unconstitutional discrimination. Defs.' MSJ at 14, Dkt. No. 8. Defendants argue in the alternative

24  that, even if Plaintiff could show that the personnel decisions in this case amounted to a

25  constitutional violation, Plaintiff's Complaint is devoid of any evidence that the County's hiring,

26  training, or supervision policies were inadequate, that the County was deliberately indifferent in

27  adopting those policies, or that those policies directly caused Plaintiff's constitutional injury. Id. at

28

22

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

9. Finally, Defendants argue that Plaintiff fails to identify any hiring, training, supervision, or retention policy that caused her constitutional harm. Id.

Plaintiff relies on the declarations of County Nurses Smith, Chambers, Powers, Celsi, Volpe, Valdez, Chase, Shumaker, Motiei, Woods, Cedillo, and McFarlane, in their "aggregate total," to support her claim that a "longstanding practice, pattern and custom of retaliating, and discriminating against employees who dare to voice complaints against management or against discriminatory practices" existed within the County. Pl.'s Opp'n at 19, Dkt. No. 25. Plaintiff makes no attempt to articulate why, in their "aggregate total," these declarations prove the County was on actual or constructive notice. The burden is with the Plaintiff to demonstrate the hospital maintained a "policy" or "custom" that created the driving force behind the alleged constitutional violation(s). Plaintiff fails to carry her burden by only pointing to the above declarations, with nothing more, as evidence of "longstanding practice[s]" of discrimination and retaliation for which the hospital was deliberately indifferent. Plaintiff's conclusory statement that the hospital has ratified the decision of their subordinate "[b]y failing to train, hire, supervise the managers, such as Traw," does not show that the municipality was on actual or constructive notice that the hospital's omission would likely result in a constitutional violation. In fact, many of the declarations included by the Plaintiff contradict her own legal theory of discrimination based on her Filipino ethnicity. See Declaration of Kathy Motiei ("Motiei Decl.") ¶ 13, Docket Item No. 30 ("I have observed [management] treating Filipina-American nurses more favorably than Non-Filipina-American nurses"); Declaration of Norma Cedillo ("Cedillo Decl.") ¶¶ 4-5, Docket Item No. 30 ("[management] always retaliated against the non-Filipino nurses"). Finally, Plaintiff's claim also fails because she has not shown that she suffered a deprivation of her constitutional rights. Plaintiff has not shown that she was a victim of unconstitutional discrimination by failing to satisfy the McDonnell Douglas burden shifting test, nor that her First Amendment rights were violated based on her attorney's letter, as discussed below.

Accordingly, Defendants are entitled to summary judgment on this claim.

**b.  Retaliation For Exercising Free Speech (Fourth Cause of**

**Action)**

To state a claim under Section 1983 for retaliation based on the exercise of freedom of speech, a plaintiff must prove: (1) "the violation of a right secured by the Constitution or laws of the United States"; and (2) "that the alleged deprivation was committed by a person acting under color of law." West v. Atkins, 487 U.S. 42, 48 (1988). Here, the Constitutional right at issue is Plaintiff's First Amendment right to freedom of speech. The First Amendment safeguards public employees from employment retaliation for their protected speech activities. Karl v. City of Mountlake Terrace, 678 F.3d 1062, 1068 (9th Cir. 2012).

The Ninth Circuit has established a five-step, burden-shifting analysis to determine whether a public employee has been retaliated against for exercising free speech rights. See Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009). To establish a prima facie case, a plaintiff needs to meet her burden of showing: (1) plaintiff spoke on a matter of public concern; (2) plaintiff spoke as a private citizen and not as a public employee; and (3) plaintiff's protected speech was a substantial or motivating factor in the adverse employment action. If a plaintiff satisfies these first three steps, the burden shifts to the employer to show: (4) the state had an adequate justification for treating the employee differently from other members of the general public; and (5) the state would have taken the adverse employment action even absent the protected speech." Robinson v. York, 566 F.3d 817, 822 (9th Cir. 2009) (quoting Eng v. Cooley, 552 F.3d at 1070-73).

Plaintiff alleges in her Amended Complaint that Defendants' retaliated against her after County Counsel received the letter sent by her attorney. FAC ¶¶ 43-48, Dkt. No. 3. She argues that the letter is her protected activity because it falls under her First Amendment Right of Free Speech. Id. Defendants' counter that Plaintiff's First Amendment claim fails because her speech was not a matter of public concern and fails because her speech was not a substantial or motivating factor in Defendants' adverse employment actions. Defs.' MSJ at 15, Dkt. No. 8. The Court agrees with Defendants for the reasons below.

**United States District Court**
For the Northern District of California

The Court's inquiry into whether Plaintiff's attorney's letter encompasses a matter of public concern is a question of law. See Eng v. Cooley, 552 F.3d at 1070. "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" See Johnson v. Multnomah Cnty., 48 F.3d 420, 422 (9th Cir. 1995) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983). When the speech involves an individual's personnel grievances, and has no relevance to the public's evaluation of the performance of that particular governmental agency's performance, courts generally do not hold that speech to a matter of public concern. See Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003). The Court looks to the "content, form, and context" of the said speech contained within the entire record. See Johnson, 48 F.3d at 422 (quoting Connick, 461 U.S. at 147-148). "Of these three factors, the content of the speech is generally the most important." Karl, 678 F.3d at 1069. "[T]he content of the communication must be of broader societal concern. [Our] focus must be upon whether the public or community is likely to be truly interested in the particular expression, or whether it is more properly viewed as essentially a private grievance." Roe v. City& Cnty. of San Francisco, 109 F.3d 578, 585 (1997) (emphases added). In examining the form and context of a plaintiff's speech, the Court focuses "on the point of the speech," Chateaubriand v. Gaspard, 97 F.3d 1218, 1223 (9th Cir. 1996), looking to such factors as the "employee's motivation and the audience chosen for the speech." Gilbrook v. City of Westminster, 177 F.3d 839, 866 (9th Cir. 1999). If the speech in question does not address a matter of public concern, then it remains unprotected and qualified immunity should be granted. Eng, 552 F.3d at 1070-71.

Applying these above principles to Plaintiff's speech at issue in this case, including the "employee's motivation" for the speech, the Court does not see how the speech involves matters of public concern. See Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 979 (9th Cir. 2002). Plaintiff's letter to County Counsel appears solely motivated by her personal concern for her own employment status and the prospect of termination. The speech at issue reflects Plaintiff's dissatisfaction with Traw's management style and her termination from the County. The letter begins by informing County Counsel that Plaintiff has retained a lawyer to represent her in a

25

complaint against Traw for harassment, retaliation, and denial of due process and fairness. Bonner

Decl., Ex. 7, Dkt. No. 30. The letter goes on to state that "through tears, palpable emotional and

mental distress and visible expressions of fear and anxiety," Plaintiff related facts involving Traw's

treatment of Plaintiff following the filed complaint by the patient. Id. Analyzing the "point of

speech," the Court notes that Plaintiff clearly was motivated by Defendants' adverse employment

action against her and chose to direct her complaint at County Counsel. Plaintiff's Opposition

asserting that her letter to County Counsel "relat[es] to the hospital's negligence" and "failure to

train [staff] regarding blood borne pathogens," nothing in the letter supports this bare assertion.

Pl.'s Opp'n at 21, Dkt. No. 25. Plaintiff's letter appears to be a personnel grievance undeserving of

First Amendment protection.

Even if the letter did relate to a matter of public concern, Plaintiff failed to establish that her

protected speech was a substantial or motivating factor in her termination. The plaintiff bears the

burden of showing the state "took adverse employment action . . . [and that the] speech was a

'substantial or motivating' factor in the adverse action." Freitag v. Ayes, 468 F.3d 528, 543 (9th

Cir. 2006) (quoting Coszalter, 320 F.3d 968, 973 (9th Cir. 2003)). Plaintiff's Opposition to the

motion provides only conclusory statements. Simply stating that the "plaintiff's speech was indeed

a 'substantial motivating factor' in the County's termination of plaintiff" or "[t]he following facts

support plaintiff's allegation," without actually presenting any facts to guide the Court's analysis,

is insufficient to meet her burden of demonstrating a nexus between the letter sent by her attorney

and the adverse employment. Pl.'s Opp'n at 21, Dkt. No. 25. Defendants' provided ample evidence

in the record that the County's decision to terminate Plaintiff's employment preceded the letter.

Gerrior testified in his depositions that he had never seen the email when he decided to release

Plaintiff. Gerrior Depo. at 79:21-3. Similarly, Traw testified that she too never saw the letter when

she signed the letter to the BRN reporting Plaintiff. Traw Dec. ¶ 5; Oliva Depo. at 123:14-21.

Plaintiff on the other hand has offered no evidence to establish a nexus between her letter and any

adverse employment action that she may have suffered.

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Plaintiff's failure to establish the first three steps of the Ninth Circuit's five-step inquiry

2    precludes the Court from further analyzing the last two steps. In light of the admissible evidence

3    showing that Defendants could not have retaliated against Plaintiff based on the letter sent to

4    County Counsel, the Court sees no genuine issue for trial.

5    Accordingly, Defendants are entitled to summary judgment on this claim.

6    **c.   Retaliation Based on Free Speech Under a Monell Theory**

7    **(Eighth Cause of Action)**

8    In <u>Monell v. Dep't of Soc. Services of City of New York</u>, 436 U.S. 658, 689 (1978), the

9    United States Supreme Court held, <u>inter alia</u>, that municipalities and other local governmental units

10   are "persons" for purposes of Section 1983 and that local governments could not be held liable

11   under a theory of respondeat superior but rather could be held liable only when the constitutional

12   deprivation arises from a governmental custom. The Ninth Circuit has held that municipal liability

13   under <u>Monell</u> may be established only if a plaintiff proves: (1) a municipal employee committed

14   the alleged constitutional violation pursuant to a formal governmental policy or a longstanding

15   practice or custom that was the standard operating procedure of the municipality; (2) the individual

16   who committed the constitutional tort was an official with final policymaking authority and the

17   challenged action itself thus constituted an act of official governmental policy; or (3) an official

18   with final policymaking authority ratified a subordinate's unconstitutional decision or action and

19   the basis for it. <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

20   Defendants argue that Plaintiff has provided no evidence to support liability under Section

21   1983. Defs.' MSJ at 18, Dkt. No. 8. Defendants argue that Plaintiff's allegations that the County

22   "maintained a custom, practice, and policy of retaliation, sham HIPAA violations" is conclusory

23   and lacks evidentiary support. Defs.' MSJ at 18-19, Dkt. No. 8. Furthermore, Defendants contend

24   that Plaintiff has failed to proffer any evidence that someone with "final policy-making authority"

25   committed any constitutional tort against her or ratified a subordinate's decision investigations, and

26   sham peer reviews against employees. Defs.' MSJ at 19, Dkt. No. 8.

27

28

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court agrees with Defendants that Plaintiff's claim under a <u>Monell</u>-theory of liability fails because Plaintiff has not met her burden of providing evidence that Traw, as a municipal employee, committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom that was the standard operating procedure of the hospital. None of the evidentiary support, which was provided through deposition of other former and current MICC nurses, is relevant to the Court's inquiry for this claim. As noted above, these declarations uniformly state that hospital management provided preferential treatment to Filipino nurses. This directly contradicts Plaintiff's alleged racial discrimination claim and is otherwise irrelevant for Plaintiff's age and gender discrimination claims.

Accordingly, Defendants' motion for summary judgment is Granted as to this claim.

### iv.   Plaintiff's Claim of Intentional Infliction of Emotional Distress (Seventh Cause of Action)

Plaintiff's seventh cause of action is against Defendant Traw for intentional infliction of emotional distress ("IIED"). The elements of a prima facie claim for IIED in California are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . In order to be considered outrageous, the conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. <u>Corales v. Bennett</u>, 488 F. Supp. 2d 975, 988 (C.D. Cal. 2007) <u>aff'd,</u> 567 F.3d 554 (9th Cir. 2009) (quoting <u>Tekle ex rel. Tekle v. United States</u>, 457 F.3d 1088, 1103 (9th Cir. 2006)) (internal quotation marks and citations omitted).

Defendants argue that, as a matter of law, this claim fails because Defendants are entitled to qualified immunity, her IIED claim is preempted by California workers' compensation law, and because Defendants' actions were not extreme or outrageous conduct. Defs.' MSJ at 20-21, Dkt. No. 8. Defendants contend that Traw is immune from liability pursuant to Government Code Section 821.6 because she was exercising her discretion as a public officer when she investigated

28

1   and ultimately took adverse employment action against Plaintiff. Id. And because Traw is entitled

2   to immunity, Defendants argue her employer, the County, should also be immune. Id. Defendants

3   also argue that Plaintiff's IIED claim is preempted by California workers' compensation law

4   because her claim is based on actions that are a normal part of the employment relationship, such

5   as demotions, promotions, criticism of work practices, and frictions in negotiations as to

6   grievances. Id. at 21. Finally, Defendants argue that even if Plaintiff can establish that immunity

7   does not apply and that her claims are not preempted under workers' compensation law, Plaintiff's

8   claim for IIED still fails because she lacks evidence of "extreme and outrageous conduct." Id.

9       The Court's initial inquiry begins with whether Defendants are entitled to qualified

10  immunity. If Defendants' conduct did not violate Plaintiff's clearly established rights, or if

11  Defendants could have reasonably believed that their conduct was lawful, they are entitled to

12  immunity. See Orozco v. Cnty. of Yolo, 814 F. Supp. 885, 895 (E.D. Cal. 1993). Defendants bear

13  the burden of establishing qualified immunity. See Crawford–El v. Britton, 523 U.S. 574, 641,

14  (1998). In Saucier v. Katz, 533 U.S. 194 (2001), the United States Supreme Court mandated a two-

15  step sequence for resolving government officials' qualified immunity claims. The Court later

16  revised its decision in Saucier stating that, "while the sequence set forth [in Saucier] is often

17  appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 555 U.S. 223, 236

18  (2009). The Court went on to state that "we continue to recognize that it [the two-step sequence] is

19  often beneficial." Id. at 236. Under this two-step inquiry then, the court first decides whether the

20  facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Saucier,

21  533 U.S. at 201. Second, if the plaintiff has satisfied this first step, the court must decide whether

22  the right at issue was "clearly established" at the time of defendant's alleged misconduct. Id.

23  Qualified immunity is applicable unless the official's conduct violated a clearly established

24  constitutional right. Pearson, 555 U.S. at 232.

25      In applying the mechanics of Saucier to this case, the Court is tasked with determining both

26  evidentiary facts and ultimate facts. That is to say, evidentiary facts consist of the testimony of

27  witnesses about what those witnesses saw, heard, or did, and are the premises upon which the

28

29

determinations of ultimate facts are based. See Black's Law Dictionary (7th Ed. 1999), while ultimate facts are those that are essential to a claim or defense, such as negligence or the reasonableness of a person's conduct. See id. The reasonableness of the conduct or belief is an ultimate fact which is ordinarily a quintessential jury question. See Sloman v. Tadlock, 21 F.3d 1462, 1468 (9th Cir. 1994) ("evaluating the reasonableness of human conduct is undeniably within the core are of jury competence"). In this case, the Court treats the threshold question of whether the facts alleged by Plaintiff show Defendants' conduct violated a constitutional right as a jury question, asking whether a reasonable jury could find a violation on the facts alleged by Plaintiff. Thus, Saucier resolves both evidentiary and ultimate facts in the light most favorable to the plaintiff. See Saucier, 121 S .Ct. at 2159 (characterizing threshold question as whether a constitutional violation "could be found" or "could have occurred" on the facts alleged by the plaintiff). With the foregoing standards in mind, the Court considers Plaintiff's allegations that Defendants engaged in intentional extreme and outrageous conduct by allegedly retaliating against Plaintiff for her participation in what she alleges was statutorily protected activity to determine whether defendants are entitled to qualified immunity.

Considering the facts in a light most favorable to Plaintiff, the Court concludes that facts as alleged by Plaintiff would not lead a reasonable jury to find a violation of constitutional rights. In her Amended Complaint, Plaintiff alleges that "Defendants engaged in extreme and outrageous conduct by retaliating against Plaintiff for [her] participation in a statutorily protected activity . . . complaining about patient care and safety." FAC ¶ 58, Dkt. No. 3. But as discussed in preceding sections, Plaintiff has failed to produce evidence of discrimination or retaliation sufficient to support her claims under FEHA. The letter Plaintiff's attorney sent to County Counsel, which she alleges complained about patient care and safety and was the basis for Defendants' retaliatory conduct, lacks any factual support. As already discussed, the letter complains only of Plaintiff's own personnel grievances with management. Furthermore, Plaintiff failed to show any causal nexus between the letter and Defendants' adverse employment action.

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Accordingly, Defendants are entitled to summary judgment on this claim and the Court need not reach whether this claim is preempted or whether Plaintiff presented sufficient evidence of "extreme and outrageous conduct."

**III.    Conclusion**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Defendants' motion for summary judgment in its entirety. Since this decision resolves this action, judgment will be entered in favor of Defendants and the clerk shall close this file. The Case Management Conference scheduled for July 25, 2014 is VACATED.

**IT IS SO ORDERED**

Dated: July 22, 2014



EDWARD J. DAVILA
United States District Judge

Case No.: 5:13-CV-02927-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT